UNITED STATES v. BERLIN ANILINE WORKS.

BERLIN ANILINE WORKS v. UNITED STATES.

(Circuit Court, S. D. New York. May 24, 1907.)

Nos. 4,377 and 4,382.

CUSTOMS DUTIES—CLASSIFICATION—PERSIAN BERRY EXTRACT—COLOR.

Persian berry extract, which is used in staining food products, and also as a dyestuff for coloring fabrics, is not dutiable under Tariff Act July 24, 1897, c. 11, § 1, Schedule A, par. 58, 30 Stat. 154 [U. S. Comp. St. 1901, p. 1630], as a color, not belonging to the "paints, colors, pigments," etc., therein enumerated, nor, by similitude, under paragraph 20 or 22, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1628], relating respectively to berries advanced in value and to extracts of barks, etc., used for dyeing, but is dutiable as an unenumerated manufactured article under section 6, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693].

On Application for Review of a Decision of the Board of United States General Appraisers.

These are cross-appeals from a decision of the Board of General Appraisers, reversing the assessment of duty by the collector of customs at the port of New York. The merchandise consists of so-called Persian berry extract, which was classified as a color under Tariff Act July 24, 1897, c. 11, § 1; Schedule A, par. 58, 30 Stat. 154 [U. S. Comp. St. 1901, p. 1630]. Said paragraph reads as follows:

"58. All paints, colors, pigments, lakes, crayons, smalts and frostings, whether crude or dry or mixed, or ground with water or oil or with solutions other than oil, not otherwise specially provided for in this Act, thirty per centum ad valorem: all paints, colors and pigments, commonly known as artists' paints or colors, whether in tubes, pans, cakes, or other forms, thirty per centum ad valorem."

The Board held that duty should have been assessed under the provision in section 6 of said act (30 Stat. 205 [U. S. Comp. St. 1901, p. 1630]) for unenumerated manufactured articles. In these appeals the government contends that duty was correctly assessed; and the importers contend that the material should have been held dutiable under paragraph 22 (30 Stat. 152 [U. S. Comp. St. 1901, p. 1628]), by similitude to "extracts and decoctions of logwood and other dyewoods, and extracts of barks, such as are commonly used for dyeing," or under paragraph 20 (30 Stat. 152 [U. S. Comp. St. 1901, p. 1628]), by similitude to the berries advanced in value or condition, which are enumerated in that paragraph.

See section 7, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1694].

The conclusions of the Board were based on a former decision (G. A. 6,272 [T. D. 27,054]), reading in part as follows:

McCLELLAND, General Appraiser. * * * The testimony before us on behalf of the importers is that the merchandise is sold by them under the name of "vegetable yellow" exclusively, for staining food products. A sample of the merchandise was submitted to the official chemist in the appraiser's office at the port of New York, with request for a report as to whether the merchandise is commercial Persian berry extract, and that officer, in response to said request reported as follows: "Not a usual extract of Persian berries. Contains much sulphonated coloring matter." Ex. 2.

The chemist who made the analysis on which said report was based was examined on the hearing, and in explanation of said report testified: "Q. Just state, if you can, by elaboration, what other meaning your report has than appears on the face of it? A. The article is simply an extract of berries. The coloring matter has been treated by a process which has introduced a sulpho-acid radical in the coloring matter—formed another body. Q. You mean by that some foreign substance is introduced other than comes from the natural berry? A. Sulphuric acid." ·

In outlines of Industrial Chemistry, by Frank Hall Thorp, Ph. D., edition of 1899, under the head of "Natural Dyestuffs," we find: "Persian berries are the dried fruit (berries) of certain buckthorn (Rhamnus) species, growing throughout southern Europe. The coloring principle is a glucoside, which is decomposed by acids into isodulcite and Rhamnetin, $C_{12} H_{10} O_5$, the latter being the dyestuff. It forms yellow and orange shades with alumina and tin, and is mainly used in calico printing."

In A Handbook of Industrial Organic Chemistry, by Sadtler, edition of 1897, it is stated: "Persian berries.—A thick extract is prepared from Persian berries, soluble in water, with yellow color shading into brown. The solution becomes clearer on addition of hydrochloric or nitric acids and deposits a dirty yellow precipitate. Ammonia or caustic soda color it a reddish yellow; stannous chloride gives at once, and stannic chloride after the addition of carbonate of soda, a golden yellow precipitate; iron salts, a dark olive-green to greenish-black color."

It thus appears that although the sale of the merchandise in question by the protestants may be exclusively used for the purpose of staining food stuffs, nevertheless Persian berry extract is recognized as a dyestuff for coloring wool and calico with mordants.

It does not seem, on a careful reading of paragraph 58, supra, that this article belongs to the "paints, colors, pigments," etc., which are therein grouped: nor do we think that the merchandise in the condition in which imported is subject to classification as claimed, either directly or by similitude, under the provisions of paragraph 22. Act July 24, 1897, c. 11, § 1, Schedule A, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1628]. In G. A. 4,716 (T. D. 22,273) the Board held that extract of nutgalls was not entitled to classification under said paragraph 22, for the reason that it was not one of the extracts mentioned in said paragraph: nutgalls being distinguished from wood, popularly, commercially, botanically, and by the tariff act.

In our opinion, the treatment to which the merchandise was subjected before importation so changed its condition as to preclude the application of the similitude clause under said paragraph 22; and, there being no special provision in the tariff act for merchandise of this character, eo nomine, we think its proper classification would be as a nonenumerated manufactured article under the provisions of section 6 of said act; and we so hold.

J. Osgood Nichols, Asst. U. S. Atty.

Walden & Webster (Henry J. Webster, of counsel), for importers.

PLATT, District Judge. Decision affirmed.